**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| **THE EQUAL RIGHTS CENTER,**<br>a not-for-profit membership organization,<br>11 Dupont Circle, N.W., Suite 400<br>Washington, D.C. 20036<br><br>     Plaintiff,<br><br>  v.<br><br>**KETTLER,**<br>a Virginia corporation,<br>1751 Pinnacle Drive, Suite 700<br>McLean, Virginia 22102<br><br>and<br><br>**KETTLER MANAGEMENT CORP.,**<br>a Virginia corporation,<br>1751 Pinnacle Drive, Suite 700<br>McLean, Virginia 22102<br><br>     Defendants. | CIVIL ACTION NO. _____<br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT FOR DECLARATORY AND**
**INJUNCTIVE RELIEF, AND FOR DAMAGES**

  1. Plaintiff, the Equal Rights Center (the "ERC"), for its Complaint against Kettler (formerly "KSI Services, Inc.") and Kettler Management Corp. (formerly "KSI Management Corp.") (collectively "Defendants" or "KETTLER"), alleges and states as follows:

  2. This action is brought by the ERC, by and through its counsel, under the Fair Housing Act, Title VIII of the Civil Rights Act of 1968 (the "Fair Housing Act" or "FHA") as amended by the Fair Housing Amendments Act of 1988 (the "FHAA"), 42 U.S.C. §§ 3601-3619, and the Americans with Disabilities Act (the "ADA"), 42 U.S.C. §§ 12181, to enjoin and remedy

ongoing and systematic violations of these civil rights laws by KETTLER in the design,

construction and/or operation of covered multifamily dwellings, including residential complexes

in the District of Columbia, Maryland, and Virginia. The ERC seeks to redress the civil rights

violations at properties KETTLER has designed, constructed, owned and/or managed.

KETTLER's actions have excluded, and are continuing to exclude, persons with disabilities from

access to KETTLER properties.

     3.     Pursuant to the FHA, every multifamily housing building containing four (4) or

more units, and built for first occupancy after March 13, 1991, is subject to the design and

construction requirements of the FHA ("covered multifamily dwellings"). The FHA requires all

ground floor units, and all units on any floor serviced by an elevator in a covered multifamily

dwelling ("covered units"), as well as "common-use and public-use areas" associated with

covered units, to contain certain features of minimum accessibility and adaptable design,

including:

     a.     common-use and public-use areas that are readily accessible to, and usable

     by, individuals with disabilities;

     b.     doors into and within covered units that are sufficiently wide to allow

     passage by persons who use wheelchairs;

     c.     an accessible route into and through the dwelling;

     d.     light switches, electrical outlets, thermostats, and other environmental

     controls in accessible locations;

     e.     reinforcements in bathroom walls that allow for the later installation of

     grab-bars; and

f.    usable kitchens and bathrooms such that an individual using a wheelchair can maneuver about the space.

4.    Pursuant to the ADA, public-use facilities, such as rental and leasing offices at apartment complexes, parking lots, sidewalks, and restrooms, built for first use after January 26, 1993, are subject to design and construction requirements that enable the full and equal enjoyment of services, facilities, privileges, and accommodations of a place of public accommodation by persons with disabilities.

5.    The United States Congress has made clear that enforcement of these civil-rights laws is necessary to protect people with disabilities from the "devastating" impact of housing discrimination, including the "architectural barriers" erected by developers who fail to construct dwellings and public accommodations accessible and adaptable to people with disabilities. *See* U.S. House of Rep. Report on the FHAA, H.R. Rep. No. 100-711 (1988).  Congress declared that such barriers, even if not the product of invidious intent, "can be just as devastating as intentional discrimination."  H.R. Rep. No. 100-711 at 25 (1988).

6.    As described herein, KETTLER has engaged in a continuous pattern and practice of discrimination against persons with disabilities in violation of both the FHA and the ADA by designing, constructing, owning, and operating covered multifamily dwellings, and the common-use and public-use areas associated with those covered dwellings, in such a manner as to deny persons with disabilities access to, and the use of, these facilities as required under these federal civil rights laws.

**PARTIES**

7.     The ERC is a non-profit membership organization with its principal place of business at 11 Dupont Circle, N.W., Suite 400, Washington, D.C. 20036.  The ERC was founded in 1999 by a group of inter-denominational clergy and community leaders to provide a multifaceted approach to civil rights issues, and to create an open society where equal opportunity for all is assured.  Since its formation, the ERC has continuously sought to advance its mission through education, counseling, advocacy, enforcement, and referral services to aid protected individuals by knowing and preserving their civil rights.  In addition, the ERC represents the interests of its approximately 150 individual members, many of whom are persons with disabilities who have a direct interest in protecting the rights of persons with disabilities.

8.     Kettler (formerly "KSI Services, Inc.") is a corporation organized under the laws of the Commonwealth of Virginia, with its principal executive offices located at 1751 Pinnacle Drive, Suite 700, McLean, Virginia 22102.  Kettler develops, redevelops, acquires, and manages covered multifamily housing dwellings across the Washington Metropolitan area, including the District of Columbia, Maryland, and Virginia.  Kettler maintains a public website at http://www.kettler.com, where it regularly posts a variety of information about its apartment and condominium properties.  Kettler publicly represents that it "is ranked among the top 15 multifamily housing developers in the nation and the largest land developer in Metropolitan Washington."  Kettler also claims to be "the largest developer of affordable housing in the Washington Metropolitan area."

9.     Kettler Management Corp. (formerly "KSI Management Corp.") is a corporation organized under the laws of the Commonwealth of Virginia with its principal place of business in McLean, Virginia.  Kettler publicly represents that its affiliate, Kettler Management Corp.,

4

develops, owns, and manages covered multifamily housing dwellings across the Washington Metropolitan area, including properties that are the subject of this Complaint. In addition, Kettler publicly represents that this corporation provides full service property management, marketing, and maintenance services to 40 communities with over 9,000 apartment homes.

10.     Through ownership, control, supervision, building, development, operation and/or management, KETTLER has been involved in the design and construction of dozens of covered multifamily housing complexes in the District of Columbia, Maryland, and Virginia. KETTLER publicly represents that it is associated with each of these covered multifamily housing complexes. The ERC has identified, through on-site inspection, KETTLER publications, or other public records, KETTLER properties that are subject to the FHA and the ADA. For purposes of this Complaint, all KETTLER properties subject to the FHA and/or the ADA are referred to as the "Subject Properties." Attached as Addendum A to this Complaint is a list of Subject Properties identified to date.

11.     On information and belief, KETTLER, through ownership and control of certain other entities, owns, has developed, designed and constructed, and manages additional multifamily housing complexes, the identity and location of which are not yet known to the ERC.

12.     As a result of KETTLER's wrongful conduct complained of herein, the ERC has been damaged by the frustration of its mission and by having to divert scarce resources that the ERC would have otherwise used to provide counseling, outreach, educational, and referral services. Instead, the ERC has devoted these resources to identifying, investigating, and counteracting KETTLER's discriminatory policies and practices. In addition, as a result of

5

KETTLER's wrongful conduct, the ERC's members, many of whom are persons with disabilities, have been injured.

## JURISDICTION AND VENUE

13.     This Court may exercise subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1332, and 42 U.S.C. §§ 3613(a) and 12188.  Further, this Court has personal jurisdiction over the Defendants.

14.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because the Defendants may be found in this District.  Venue is also proper because a substantial part of the events and omissions giving rise to the claims herein occurred in this District, one of the Subject Properties that is the subject of this action is located in this District, and the ERC is located in this District.

## FACTUAL AND LEGAL BACKGROUND

15.     As a result of its activities, the ERC became aware that a large number of new multifamily housing complexes were being constructed in the greater Washington, D.C. area that did not include the required elements of accessibility and adaptable design.

16.     The ERC visited a number of KETTLER properties and discovered FHA and ADA violations in the design and construction of each of those properties.

17.     As a result of the discovery of these violations by KETTLER, the ERC further diverted resources, including funding and staff members' time, from other activities in order to conduct further investigation and testing of KETTLER properties to ascertain the extent of the FHA and ADA violations by KETTLER.

18.     Beginning in 2006, the ERC tested sixteen (16) of the Subject Properties in the District of Columbia, Maryland, and Virginia (the "Tested Properties"). The Tested Properties are indicated on Addendum A with an asterisk.

19.     The Tested Properties are subject to the design and construction requirements set forth in 42 U.S.C. § 3604(f)(3)(C) of the FHA because the properties include "covered multifamily dwellings" within the meaning of the FHA, 42 U.S.C. § 3604(f)(7)(A), and were built for first occupancy after March 13, 1991.

20.     Similarly, each of the sixteen (16) Tested Properties was constructed for first occupancy or remodeled after January 26, 1993, and is subject to the prohibition on discrimination in 42 U.S.C. § 12182(a) of the ADA, and to the design and construction requirements of 42 U.S.C. § 12183(a)(1) of the ADA and the applicable regulations. Each Tested Property has a rental or leasing office, with facilities and accommodations appurtenant to the office, including parking, sidewalks, and restrooms, which constitute "public accommodations" within the meaning of the ADA, 42 U.S.C. § 12181(7).

21.     The ERC identified at least one FHA or ADA violation, and in most cases multiple violations, at each of the Tested Properties. The frequency and similarity of these violations demonstrate that KETTLER has engaged in a pattern and practice of designing and constructing apartment properties in violation of FHA and ADA accessibility design requirements. The ERC anticipates that further investigation and discovery will identify additional FHA and ADA violations at the Tested Properties.

22.     By way of example, covered dwelling units in the Tested Properties subject to FHA design and construction requirements exhibited, with varying frequency by complex, the following violations:

7

a.    doors in units that are not sufficiently wide so as to allow passage into kitchens, bathrooms, bedrooms, and other areas in the units by a person using a wheelchair;

b.    units that do not provide an accessible route into and through the unit, including access to patios, balconies, and other outside areas;

c.    bathrooms that do not have sufficient clear floor space so as to allow a person using a wheelchair to maneuver about the space;

d.    kitchens that do not have sufficient clear floor space so as to allow a person using a wheelchair to maneuver about the space; and

e.    light switches, electrical outlets, thermostats, or other environmental controls placed at heights that make them inaccessible to a person in a wheelchair.

23.    Many of the Tested Properties also violate FHA accessibility requirements because the common areas used by residents were not designed and constructed in such a manner that they are readily accessible to, and usable by, persons with disabilities.

24.    By way of example, some of the violations in the common-use and public-use areas of the Tested Properties include the following:

a.    lack of accessible routes into and through common-use and public-use areas, including a lack of accessible routes to patios, balconies, and other outside facilities; and

b.    environmental controls, electrical switches, or alarms placed at heights that make them inaccessible to a person in a wheelchair.

8

25.    Many of the Tested Properties also violate the accessibility requirements of the ADA, 42 U.S.C. §§ 12182(a)-12183(a)(1), and the applicable regulations, as well as the FHA, because the rental and leasing offices, including facilities and accommodations appurtenant to the offices that are areas of public use, are not readily accessible to, and usable by, persons with disabilities.

26.    By way of example, public-use area violations include the following:

a.    lack of reserved and accessible parking;

b.    lack of an accessible route from the parking area to the rental and leasing office, and/or an accessible entrance to the office; and

c.    inaccessible or obstructed curb cuts.

27.    The following specific examples are illustrative of KETTLER's pattern and practice of FHA and ADA violations:

**Kettler Woodmont Crossing**

28.    KETTLER's Woodmont Crossing Apartments, in Washington, D.C., is a covered multifamily housing complex that consists of 176 units in garden-style buildings that was completed in 2002.  The ERC observed the following violations at the Woodmont Crossing Apartments:

a.    a lack of accessible routes to common-use areas, such as trash facilities;

b.    thresholds at common-use and public-use areas that act as a barrier to a person using a wheelchair;

c.    a lack of accessible routes to and through units;

d.    interior doors that are too narrow to pass through by a person using a wheelchair;

9

    e.     kitchen clearance that is inadequate to allow a person using a wheelchair to maneuver about the space; and

    f.     bathroom clearance that is inadequate to allow a person using a wheelchair to maneuver about the space.

### Kettler The Fields of Germantown

29.    KETTLER's The Fields of Germantown Apartments, in Germantown, Maryland, is a covered multifamily housing complex that consists of 143 units in garden-style buildings that was completed in 2000. The ERC observed the following violations at The Fields of Germantown Apartments:

    a.     light switches in public-use areas that are placed at heights that make them inaccessible to a person in a wheelchair;

    b.     public restroom clearance that is insufficient to allow a person using a wheelchair to maneuver about the space;

    c.     environmental controls and light switches in units that are placed at heights that make them inaccessible to a person in a wheelchair;

    d.     kitchen clearance that is inadequate to allow a person using a wheelchair to maneuver about the space; and

    e.     bathroom clearance that is inadequate to allow a person using a wheelchair to maneuver about the space.

### Kettler County Center Crossing

30.    KETTLER's County Center Crossing Apartments, in Woodbridge, Virginia, is a covered multifamily housing complex that consists of 224 apartment units in garden-style

buildings that was completed in 2004. The ERC observed the following violations at the County Center Crossing Apartments:

   a.    light switches in public-use areas that are placed at heights that make them inaccessible to a person in a wheelchair;

   b.    environmental controls and light switches in units that are placed at heights that make them inaccessible to a person in a wheelchair;

   c.    kitchen clearance that is inadequate to allow a person using a wheelchair to maneuver about the space; and

   d.    bathroom clearance that is inadequate to allow a person using a wheelchair to maneuver about the space.

## Kettler's Glen Ridge Commons

   31.    KETTLER's Glen Ridge Commons Apartments, in Woodbridge, Virginia, is a covered multifamily housing complex that consists of 140 units in garden-style buildings that was completed in 1997. The ERC observed the following violations at the Glen Ridge Commons Apartments:

   a.    thresholds at public-use areas and within the units that act as a barrier to a person using a wheelchair;

   b.    environmental controls that are placed at heights that make them inaccessible to a person in a wheelchair;

   c.    kitchen clearance that is inadequate to allow a person using a wheelchair to maneuver about the space; and

   d.    bathroom clearance that is inadequate to allow a person using a wheelchair to maneuver about the space.

## Kettler Kenton Crossing

32.     KETTLER's Kenton Crossing Apartments, in Lorton, Virginia, is a covered multifamily housing complex that consists of 248 units in garden-style buildings that was completed in 2001. The ERC observed the following violations at the Kenton Crossing Apartments:

a.     interior doors that are too narrow to pass through by a person using a wheelchair;

b.     environmental controls that are placed at heights that make them inaccessible to a person in a wheelchair;

c.     kitchen clearance that is inadequate to allow a person using a wheelchair to maneuver about the space; and

d.     bathroom clearance that is inadequate to allow a person using a wheelchair to maneuver about the space.

## Kettler The Metropolitan of Fairfax

33.     KETTLER's The Metropolitan of Fairfax Apartments, in Herndon, Virginia, is a covered multifamily housing complex that consists of 244 apartment units in garden-style buildings that was completed in December 2004 or January 2005. The ERC observed the following violations at The Metropolitan of Fairfax Apartments:

a.     environmental controls that are placed at heights that make them inaccessible to a person in a wheelchair;

b.     kitchen clearance that is inadequate to allow a person using a wheelchair to maneuver about the space; and

12

      c.      bathroom clearance that is inadequate to allow a person using a wheelchair to maneuver about the space.

### Kettler The Metropolitan at Reston Town Center

34.      KETTLER's The Metropolitan at Reston Town Center Apartments, in Reston, Virginia, is a covered multifamily housing complex that consists of 288 apartment units in a high-rise building serviced by elevators that was completed in November 2006 or December 2006. The ERC observed the following violations at The Metropolitan at Reston Town Center Apartments:

      a.      entry access control panel that is placed at a height that makes it inaccessible to a person in a wheelchair;

      b.      environmental controls that are placed at heights that make them inaccessible to a person in a wheelchair;

      c.      bathroom clearance that is inadequate to allow a person using a wheelchair to maneuver about the space; and

      d.      doorway thresholds to the balconies that act as a barrier to a person using a wheelchair.

### Kettler West Village at Shirlington

35.      KETTLER's West Village at Shirlington Condominiums, in Arlington, Virginia, is a covered multifamily housing complex that consists of 528 condominium units in garden-style buildings that was completed for first occupancy in December 2006. The ERC observed the following violations at the West Village at Shirlington Condominiums:

      a.      inaccessible routes to ground floor units;

      b.      curb cuts that are too high to allow access by a person using a wheelchair;

c.   environmental controls that are placed at heights that make them
     inaccessible to a person in a wheelchair;

d.   doorways in units that are too narrow to pass through by a person using a
     wheelchair;

e.   kitchen clearance that is inadequate to allow a person using a wheelchair
     to maneuver about the space; and

f.   bathroom clearance that is inadequate to allow a person using a wheelchair
     to maneuver about the space.

## Pattern and Practice Among Subject Properties

36.    On information and belief, KETTLER participated in, supervised, controlled
and/or approved the design and construction at each of the Subject Properties.  Moreover, on
information and belief, KETTLER owns, manages and/or operates each of the Subject
Properties.

37.    The pattern and practice of KETTLER's discriminatory conduct is evidenced in
several ways.  By way of example:

a.   A comparison of the sixteen (16) Tested Properties evidences a pattern and
     practice of design and construction violations.  For instance:

     1)   Eleven (11) Tested Properties – Woodmont Crossing, The Fields
          of Germantown, County Center Crossing, Glen Ridge Commons,
          Kenton Crossing, The Metropolitan of Fairfax, West Village at
          Shirlington, Springfield Crossing, The Fields of Cascades, The
          Fields of Herndon, and The Metropolitan at Pentagon Row –
          contain kitchens of common design that result in inadequate

14

clearance to allow a person using a wheelchair to maneuver about the space.

2) Thirteen (13) Tested Properties – Woodmont Crossing, The Fields of Germantown, County Center Crossing, Glen Ridge Commons, Kenton Crossing, The Metropolitan of Fairfax, The Metropolitan at Reston Town Center, West Village at Shirlington, Sanger Place, The Fields of Cascades, The Fields of Herndon, The Fields of Manassas, and The Metropolitan at Pentagon City – contain bathrooms of common design that result in inadequate clearance to allow a person using a wheelchair to maneuver about the space.

3) Eight (8) Tested Properties – Woodmont Crossing, The Fields of Germantown, The Metropolitan at Pentagon Row, Kenton Crossing, The Fields of Herndon, The Fields of Manassas, Cascades Overlook, and West Village of Shirlington – contain unit doors that are not sufficiently wide so as to allow passage into kitchens, bathrooms, bedrooms, and other areas in the unit by a person in a wheelchair.

4) Eleven (11) Tested Properties – Woodmont Crossing, The Metropolitan at Pentagon Row, The Metropolitan at Pentagon City, Springfield Crossing, Glen Ridge Commons, Sanger Place, The Fields of Herndon, The Fields of Manassas, The Fields of Cascades, West Village of Shirlington, and The Metropolitan at

15

Reston Town Center – contain door or entryway thresholds within units and/or common-use and public-use areas that act as a barrier to a person using a wheelchair.

5) Twelve (12) Tested Properties – The Fields of Germantown, County Center Crossing, Glen Ridge Commons, Kenton Crossing, The Fields of Manassas, Sanger Place, The Metropolitan at Pentagon Row, Cascades Overlook, The Fields of Herndon, The Metropolitan of Fairfax, The Metropolitan of Reston Town Center, and West Village of Shirlington – contain environmental controls that are placed at heights that make them inaccessible to a person in a wheelchair.

6) Four (4) Tested Properties – The Fields of Germantown, County Center Crossing, Cascades Overlook, and The Fields of Herndon – contain light switches that are placed at heights that make them inaccessible to a person in a wheelchair.

b. A comparison of the Tested Properties to the remaining untested Subject Properties demonstrates that they too share relevant common elements of design, as evidenced by floor plans published by KETTLER. Common design elements among the Tested Properties and untested Subject Properties range from the use of common bathroom or kitchen designs to virtually identical floor plans in numerous complexes. By way of example:

1) Seven (7) Tested Properties – The Fields of Herndon, The Fields of Manassas, Sanger Place, Kenton Crossing, County Center

16

Crossing, The Fields of Cascades, and Glen Ridge Commons – share common design elements in the bathrooms of their units, and with the bathroom units of six (6) of the untested Subject Properties. Each of these properties utilizes a common bathroom design that makes the width of the room equal to the length of the bathtub, and arranges the bathtub, the toilet, and the lavatory in sequence along a single wall. This common design results in inadequate distances between facilities in these bathrooms, making them inaccessible to a person in a wheelchair.

2)  Three (3) Tested Properties – The Metropolitan at Fairfax, Culpepper Commons, and Glen Ridge Commons – share common design elements in the bathrooms of their units, and with the bathroom units of four (4) of the untested Subject Properties. Each of these properties utilizes a common bathroom design that makes the distance between the bathroom sink too close to the nearest obstruction, making them inaccessible to a person in a wheelchair.

3)  Five (5) Tested Properties – The Fields of Herndon, Springfield Crossing, Kenton Crossing, The Metropolitan at Pentagon City, and Glen Ridge Commons – share common design elements in the kitchens of their units, and with the kitchens of five (5) of the untested Subject Properties. These "galley" kitchens do not

allow adequate clearance to allow a person using a wheelchair to maneuver about the space.

38.     On information and belief, and as demonstrated by (a) the pervasiveness and similarity of the FHA and ADA violations at the Tested Properties, and (b) the common elements of design at the Tested Properties and untested Subject Properties, KETTLER's continuing pattern and practice of design and construction have resulted in violations at each of the Subject Properties.  KETTLER's violations are continuing, ongoing, and demonstrate a pervasive pattern and practice of systematic and continuous FHA and ADA violations over several years. KETTLER has repeatedly and continually failed to design and construct covered multifamily dwellings, including their common-use and public-use areas, in accordance with the requirements of 42 U.S.C. § 3604(f)(3)(C), 42 U.S.C. § 12183(a)(1), and the applicable regulations.

39.     Some of the Subject Properties that constitute part of KETTLER's pattern and practice of designing and constructing inaccessible multifamily dwellings have been completed within two years of the filing of this Complaint.

40.     In carrying out the aforementioned actions, KETTLER acted intentionally and willfully, and with callous and reckless disregard of the FHA and ADA, as well as the rights of persons with disabilities to accessible housing.

## INJURY TO PLAINTIFF

41.     As a result of KETTLER's actions described above, the ERC has been directly and substantially injured in that it has been frustrated in its mission to eradicate discrimination in housing and in carrying out the programs and services that it provides, including encouraging

18

integrated living patterns, educating the public about fair housing rights and requirements, educating and working with industry groups on fair housing compliance, providing counseling services to persons either looking for housing or affected by discriminatory housing practices, and eliminating discriminatory housing practices.

42.    KETTLER's continuing discriminatory practices also have forced the ERC to divert significant and scarce financial and organizational resources to identify, investigate, and counteract KETTLER's discriminatory practices, and such practices have frustrated the ERC's efforts against discrimination – such as the ERC's efforts and programs to provide counseling, outreach, educational, and referral services – thereby causing the ERC to suffer a concrete and demonstrable injury.

43.    In addition to and independent of the injuries stated above, the ERC's individual members, many of whom are disabled persons living within the proximity of one or more Subject Properties, have been damaged as a result of KETTLER's wrongful conduct complained of herein, including being damaged by KETTLER's denial of access to KETTLER's dwelling units, common-use areas, and public-use areas.

44.    Until remedied, KETTLER's unlawful, discriminatory actions will continue to injure the ERC by, *inter alia*:

      a.    interfering with efforts and programs intended to bring about equality of opportunity in housing;

      b.    requiring the commitment of scarce resources, including substantial staff time and funding, to investigate and counteract KETTLER's discriminatory conduct, thus diverting those resources from the ERC's educational, outreach, and counseling activities and services;

    c.    frustrating its mission and purpose of promoting the equal availability of housing to all persons without regard to any protected category, including disability; and

    d.    injuring the rights and interests of the ERC's individual members who have disabilities by making the Subject Properties unavailable to them.

## FIRST CLAIM FOR RELIEF
### (FHA Violations)

45.    Plaintiff adopts and realleges the allegations in paragraphs 1 – 44.

46.    The Subject Properties are comprised of at least twenty-three (23) complexes and contain more than four thousand five hundred (4,500) individual housing units.

47.    Each of the Subject Properties is a covered multifamily dwelling subject to the FHA. At the Subject Properties, each of the ground-floor units in all buildings, and all units in buildings on floors serviced by an elevator, is a "covered unit" within the meaning of the FHA. Each "covered unit" at the Subject Properties, and the common-use and public-use areas at the Subject Properties, is subject to the design and construction requirements of the FHA, 42 U.S.C. § 3604(f)(3)(C).

48.    The ERC tested sixteen (16) of the Subject Properties and found numerous violations of the FHA, 42 U.S.C. § 3604(f)(3)(C), at virtually every property.

49.    On information and belief, based on the violations identified in the Tested Properties, and KETTLER's pattern of incorporating common design elements in the design and construction of its "covered units," FHA violations are present in each of the Subject Properties. In some instances, KETTLER utilized the same (or virtually the same) floor plans or "foot prints" in the design and construction of hundreds, if not thousands, of the "covered units" at the Subject Properties.

20

50.    On information and belief, KETTLER has repeatedly and continually failed to design and construct the Subject Properties so that, among other things:

    a.    common-use and public-use areas are readily accessible to, and usable by, individuals with disabilities;

    b.    doors into and within covered units are sufficiently wide so as to allow passage by a person in a wheelchair;

    c.    covered units contain the following features of adaptive design:

        1)    an accessible route into and through the dwelling;

        2)    usable kitchens and bathrooms such that a person using a wheelchair can maneuver about the space; and

        3)    light switches, electrical outlets, thermostats, and other environmental controls in accessible locations.

51.    Through the actions and inactions describe above, KETTLER has:

    a.    discriminated in the sale or rental of, or otherwise denied or made unavailable, dwellings to persons because of their disabilities in violation of the FHA, 42 U.S.C. § 3604(f)(1);

    b.    discriminated against persons because of their disabilities in the terms, conditions, or privileges of the rental of a dwelling, or in the provision of services or facilities in connection with the rental of a dwelling, in violation of the FHA, 42 U.S.C. § 3604(f)(2); and

    c.    failed to design and construct dwellings in compliance with the requirements mandated by the FHA, 42 U.S.C. § 3604(f)(3), and the applicable regulations.

52.    The actions complained of constitute a continuing pattern and practice of repeated and continuing FHA violations in that KETTLER has engaged in a systematic and consistent discriminatory pattern and practice of designing and constructing covered multifamily dwellings in violation of FHA requirements.

53.    KETTLER's conduct has been intentional, willful, and taken in disregard of the rights of others.

54.    As a result of KETTLER's wrongful conduct, the ERC, both in its own right and as a representative of its individual members with disabilities, has been injured by a discriminatory housing practice and, therefore, is an "aggrieved person" as defined by the FHA, 42 U.S.C. 3602(i)(1).

55.    On information and belief, based on its past and ongoing practices, KETTLER is continuing with its practices of designing and constructing covered multifamily dwellings and common-use and public-use areas that are in violation of the FHA.  Pursuant to Section 3613(a)(1) of the FHA, the ERC is entitled to temporary and permanent injunctive relief, enjoining KETTLER, its officers, directors, employees, agents, successors, assigns, and all other persons in active concert or participation with any of them, from constructing – including the acquisition of any building or construction permits, or certificates of occupancy – any covered multifamily housing and common areas that fail to fully comply with the FHA and the applicable regulations.

56.    On information and belief, KETTLER, as part of its ongoing business plans, anticipates selling (or is in the process of selling) certain of its condominium or apartment facilities, including "covered units."  By way of example, KETTLER is presently advertising the sale of condominium units at no less than seven (7) complexes.

57.    To the extent that such sales continue, the ERC is irreparably harmed and this Court's ability to render a meaningful judgment after a trial of this matter is frustrated.  As a result, this Court may, and should, order temporary injunctive relief prohibiting the sale by KETTLER of any apartment or condominium complex containing a covered unit, or any individual covered unit, until the entry of final relief herein, including such retrofit alteration to covered units as may be ordered by the Court.

22

## SECOND CLAIM FOR RELIEF
### (ADA Violations)

58.    Plaintiff adopts and realleges the allegations in paragraphs 1 – 57.

59.    The rental and leasing offices at the Subject Properties, and the features and accommodations appurtenant to these offices, are sales or rental establishments, the operations of which affect commerce, and are "public accommodations" as defined by 42 U.S.C. § 12181(7).

60.    The rental and leasing offices, and the facilities and accommodations appurtenant to the public use of the rental offices, including the parking, sidewalks, and restrooms at the offices of the Subject Properties designed and constructed for first use after January 26, 1993, are subject to the prohibition on discrimination contained in 42 U.S.C. § 12182(a), and are subject to the design and construction requirements of 42 U.S.C. § 12183(a)(1).

61.    The ERC tested the sixteen (16) Tested Properties and found numerous ADA violations.

62.    On information and belief, based on the results at the Tested Properties, KETTLER has failed to design and construct certain Subject Properties' rental and leasing offices, and the appurtenant parking, sidewalks, and restrooms at those offices, in such a manner that the facilities are readily accessible to, and usable by, individuals with disabilities.

63.    The actions of KETTLER, as described herein, constitute:

   a.    discrimination against individuals with disabilities in the full and equal enjoyment of the services, facilities, privileges, and accommodations of a place of public accommodation in violation of the ADA, 42 U.S.C. § 12182(a); and

   b.    a failure to design and construct or remodel public accommodations in compliance with the requirements of the ADA, 42 U.S.C. § 12183(a)(1) and (2), and the applicable regulations.

64.    The actions complained of constitute a pattern and practice of repeated and continuing violations of the ADA in that KETTLER has engaged in a systematic and consistent

discriminatory practice of designing and constructing the rental offices and the appurtenant

parking, sidewalks, and restrooms at those rental offices in violation of the requirements of the

ADA and the applicable regulations.

65.    The actions of KETTLER complained of here have the effect of denying the

ERC's disabled individual members, as well as that segment of the general public with

disabilities, access to the rental offices and the appurtenant parking, sidewalks, and restrooms at

those rental offices at the Subject Properties.

66.    The ERC is an "aggrieved person," and this Court is entitled to grant such relief it

considers appropriate pursuant to 42 U.S.C. § 12188(b)(2)(B), including temporary and

permanent injunctive relief and damages, as a result of KETTLER's wrongful conduct.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, the ERC, respectively prays that this Court grant it judgment in

its favor, and against KETTLER, as follows:

A.    declaring, pursuant to 28 U.S.C. § 2201, that KETTLER's practices and actions,
as alleged herein, violate the FHA, the ADA, and the applicable regulations;

B.    enjoining KETTLER, its officers, directors, employees, agents, successors,
assigns, and all other persons in active concert or participation with any of them,
both temporarily during the pendency of this action and permanently, from:

1.    constructing, including the acquisition of any building or construction
permits, or certificates of occupancy, any covered multifamily housing
and/or common areas that, in any way, fail to comply with the FHA and
the applicable regulations;

2.    selling or otherwise transferring ownership or control of any apartment or
condominium complex containing a covered unit, or any individual
covered dwelling unit, until the entry of, and compliance with, final relief
herein, or until the completion of such retrofits to covered units, common-

24

use areas, and public-use areas as are necessary to comply with the requirements of the FHA and ADA;

3.      failing or refusing to bring the covered dwelling units and the common-use and public-use areas at the Subject Properties into immediate compliance with the requirements of 42 U.S.C. § 3604(f)(3)(C) and the applicable regulations;

4.      failing or refusing to bring the common-use and public-use areas at the Subject Properties into immediate compliance with the requirements of 42 U.S.C. §§ 12182-83 and the applicable regulations; and

5.      failing or refusing to design and construct any covered multifamily dwellings in the future in compliance with the FHA, the ADA, and the applicable regulations.

C.      awarding such damages as would fully compensate the ERC for the injuries incurred as a result of KETTLER's discriminatory housing practices and conduct;

D.      awarding such punitive damages against KETTLER as are proper under the law;

E.      awarding the ERC its costs and attorneys' fees incurred herein; and

F.      awarding the ERC such other relief as this Court deems just and proper.

## JURY TRIAL DEMAND

Plaintiff hereby demands a trial by jury.

Dated: June 6, 2007                    Respectfully Submitted,

Douglas W. Baruch (D.C. Bar No. 414354)
Seth W. Greene (D.C. Bar No. 482610)
Alyssa C. Lareau (D.C. Bar No. 494881)
FRIED FRANK HARRIS SHRIVER & JACOBSON LLP
1001 Pennsylvania Avenue, N.W., Suite 800
Washington, D.C. 20004
Tel:    (202) 639-7000
Fax:    (202) 639-7003
E-mail: douglas.baruch@friedfrank.com

and

Isabelle M. Thabault (D.C. Bar No. 318931)
Donald L. Kahl (D.C. Bar No. 489472)
WASHINGTON LAWYERS' COMMITTEE
FOR CIVIL RIGHTS AND URBAN AFFAIRS
11 Dupont Circle, N.W., Suite 400
Washington, D.C. 20036
Tel:    (202) 319-1000
Fax:    (202) 319-1010
E-mail: Isabelle_Thabault@washlaw.org
        Don_Kahl@washlaw.org

Attorneys for Plaintiff
The Equal Rights Center

26

# Addendum A

## KETTLER Subject Properties

**"*" Designates "Tested Properties"**

### District of Columbia

*Woodmont Crossing (176 units)
2327 Good Hope Court, S.E.
Washington, D.C. 20020

### Maryland

*The Fields of Germantown (143 units)
12912 Fallingwater Circle
Germantown, MD 20874

### Virginia

Ashburn Commons
43848 Dodge Terrace
Ashburn, VA 20147

*Cascades Overlook (360 units)
20802 Wallingford Square
Sterling, VA 20165

Chantilly Crossing
13950 Rockland Village Drive
Chantilly, VA 20151

Chatham Commons
46910 Shady Point Square
Sterling, VA 20164

*County Center Crossing (224 units)
7000 Lakota Drive
Woodbridge, VA 22192

Culpepper Commons
1301 Spring Meadow Lane
Culpepper, VA 22701

i

*Glen Ridge Commons (140 units)
12810 Island House Loop
Woodbridge, VA 22193

Highland Commons
12 Walker Drive #104
Warrenton, VA 20186

*Kenton Crossing (248 units)
7800 Lewis Chapel Circle
Lorton, Virginia 22079

*Sanger Place (182 units)
9454 Orange Blossom Trail
Lorton, VA 22079

Shenandoah Commons
9 Shenandoah Commons Way
Front Royal, VA 20151

*Springfield Crossing
6704 Metropolitan Center Drive
Springfield, VA 22150

The Fields at Merrifield
2929 Stillwood Circle
Falls Church, VA 22042

*The Fields at Cascades (320 units)
21260 Huntington Square
Sterling, VA 20166

*The Fields of Herndon (288 units)
2450 Masons Ferry Drive
Herndon, VA 20171

*The Fields of Manassas (180 units)
7431 Willoughby Lane
Manassas, VA 20109

*The Metropolitan of Fairfax (224 units)
13161 Fox Hunt Lane
Herndon, VA 20171

*The Metropolitan at Pentagon City (325 units)
901 S. 15th St.
Arlington, VA 22202

*The Metropolitan at Pentagon Row (326 units)
1401 S. Joyce St.
Arlington, VA 22202

*The Metropolitan at Reston Town Center (288 units)
1855 S. Francis St.
Reston, VA 20190

*West Village of Shirlington (528 units)
4161 S. Four Mile Run Drive
Arlington, VA 22204

*07-1017 RBW* (handwritten)

**CIVIL COVER SHEET**

JS-44
(Rev.1/05 DC)

| I.(a) PLAINTIFFS | DEFENDANTS |
|---|---|
| THE EQUAL RIGHTS CENTER      *110 y* | KETTLER and KETTLER MANAGEMENT CORP. |

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF _District of Columbia_
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _Fairfax, Virginia_
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Douglas W. Baruch, Esquire
Fried, Frank, Harris, Shriver & Jacobson LLP
1001 Pennsylvania Avenue, N.W., Suite 800
Washington, D.C. 20004-2505 (202) 639-7052

*JURY ACTION* (stamp)

Case: 1:07-cv-01017
Assigned To : Walton, Reggie B.
Assign. Date : 6/6/2007
Description: Civil Rights-Non Employ.

## II. BASIS OF JURISDICTION

(PLACE AN x IN ONE BOX ONLY)

- ○ 1 U.S. Government Plaintiff
- ⊙ 3 Federal Question (U.S. Government Not a Party)
- ○ 2 U.S. Government Defendant
- ○ 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT

(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

**○ A. Antitrust**

- ☐ 410 Antitrust

**○ B. Personal Injury/ Malpractice**

- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury
- ☐ 362 Medical Malpractice
- ☐ 365 Product Liability
- ☐ 368 Asbestos Product Liability

**○ C. Administrative Agency Review**

- ☐ 151 Medicare Act

Social Security:
- ☐ 861 HIA ((1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g)
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g)

Other Statutes
- ☐ 891 Agricultural Acts
- ☐ 892 Economic Stabilization Act
- ☐ 893 Environmental Matters
- ☐ 894 Energy Allocation Act
- ☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

**○ D. Temporary Restraining Order/Preliminary Injunction**

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

**○ E. General Civil (Other)     OR     ○ F. Pro Se General Civil**

Real Property
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent, Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

Personal Property
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

Bankruptcy
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

Prisoner Petitions
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition

Property Rights
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

Federal Tax Suits
- ☐ 870 Taxes (US plaintiff or defendant
- ☐ 871 IRS-Third Party 26 USC 7609

Forfeiture/Penalty
- ☐ 610 Agriculture
- ☐ 620 Other Food &Drug
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 630 Liquor Laws
- ☐ 640 RR & Truck
- ☐ 650 Airline Regs
- ☐ 660 Occupational Safety/Health
- ☐ 690 Other

Other Statutes
- ☐ 400 State Reapportionment
- ☐ 430 Banks & Banking
- ☐ 450 Commerce/ICC Rates/etc.
- ☐ 460 Deportation

- ☐ 470 Racketeer Influenced & Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Satellite TV
- ☐ 810 Selective Service
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 875 Customer Challenge 12 USC 3410
- ☐ 900 Appeal of fee determination under equal access to Justice
- ☐ 950 Constitutionality of State Statutes
- ☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

② (circled)

| | | | |
|---|---|---|---|
| ○ **G.** *Habeas Corpus/ 2255* | ○ **H.** *Employment Discrimination* | ○ **I.** *FOIA/PRIVACY ACT* | ○ **J.** *Student Loan* |
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment<br> (criteria: race, gender/sex,<br> national origin,<br> discrimination, disability<br> age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions<br> (if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted<br> Student Loans<br> (excluding veterans) |

| | | | |
|---|---|---|---|
| ○ **K.** *Labor/ERISA (non-employment)* | ⊙ **L.** *Other Civil Rights (non-employment)* | ○ **M.** *Contract* | ○ **N.** *Three-Judge Court* |
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting &<br> Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights<br> Act)<br>☒ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-<br> Employment<br>☐ 446 Americans w/Disabilities-<br> Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment &<br> Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of<br> Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting<br> (if Voting Rights Act) |

**V. ORIGIN**

⊙ 1 Original Proceeding  ○ 2 Removed from State Court  ○ 3 Remanded from Appellate Court  ○ 4 Reinstated or Reopened  ○ 5 Transferred from another district (specify)  ○ 6 Multi district Litigation  ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

42 U.S.C. Sections 3601-3619 and 42 U.S.C. Section 12181, to enjoin and remedy ongoing and systematic violations of these civil rights laws.

| **VII. REQUESTED IN COMPLAINT** | CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 | **DEMAND $** ☐ | Check YES only if demanded in complaint |
|---|---|---|---|
| | | **JURY DEMAND:** | YES ☒   NO ☐ |

**VIII. RELATED CASE(S) IF ANY**  (See instruction)  YES ☐  NO ☒  If yes please complete related case form.

DATE  June 6, 2007    SIGNATURE OF ATTORNEY OF RECORD

---

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.  COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.  CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.  CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.  CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.  RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.

✓